ETHEL CARROLL *vs.* LAURENT R. BOULEY, administrator.

Bristol. January 6, 1959. — March 5, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Motor vehicle.

At the trial of an action against an administrator for injuries sustained by the plaintiff when, while she was riding in an automobile stopped near an intersection of streets on a clear, dry morning, another automobile entered and crossed the intersection from the opposite direction against a red traffic light and, moving at a speed of thirty-five miles an hour, struck and broke the post of the traffic light and then crossed the street and struck the automobile occupied by the plaintiff, testimony by the plaintiff that she saw the other automobile coming and "did not observe anyone in the driver's seat . . . before it hit the post," and evidence that within five minutes after the collision between the two automobiles the defendant's intestate was found lying on the floor of the other automobile, alone and suffering severely from a heart attack of which he died shortly thereafter, did not require a finding that, after operating the automobile normally, he had experienced a sudden and unforeseeable physical seizure depriving him of the capacity to control his automobile before it entered the intersection so that he was exonerated from responsibility for its operation thereafter.

TORT. Writ in the Second District Court of Bristol dated June 13, 1957.

Upon removal to the Superior Court the action was tried before *Callan,* J., a District Court judge sitting under statutory authority.

The case was argued in January, 1959, before *Wilkins,* C.J., *Ronan, Spalding, Whittemore,* & *Cutter,* JJ., and afterwards was submitted on briefs to all the Justices.

*H. William Radovsky,* for the plaintiff.

*Gerald P. Walsh,* for the defendant.

WILKINS, C.J. This is an action of tort for injuries received by the plaintiff on September 5, 1956, when the

automobile in which she was riding in Fall River was struck by an automobile owned and operated by the defendant's intestate, Lawrence J. Bouley. At the close of the evidence the judge directed a verdict for the defendant subject to the plaintiff's exception.

We state the evidence most favorable to the plaintiff. It was 7:30 A.M. on a clear, dry day, and the plaintiff was seated in the front seat of an automobile, operated by her husband, which was stopped in a line of traffic awaiting a green light. The automobile was third in line headed north on the east side of South Main Street about fifty feet south of the intersection of South Main and Globe streets. The intersection is in a thickly settled business area. North of the intersection South Main Street is straight and level for 200 to 300 yards. Another street, Broadway, enters the intersection obliquely from the northwest.

Southbound traffic was governed by a signal light at the southwest corner of Globe and South Main streets. When the automobile in which the plaintiff was riding had been stopped for about a minute, she saw an automobile coming through the intersection from north to south on the west side of South Main Street and headed toward the signal light. The plaintiff "did not observe anyone in the driver's seat of the Bouley car before it hit the post." That automobile "struck the red light," broke it off at the base, and carrying it across the street at thirty-five miles an hour, struck the standing automobile in which the plaintiff was riding, and pushed it sideways about five feet against the curb.

Five minutes later, when a police officer arrived, the defendant's intestate was found lying on the automobile floor with his head "toward the passenger side" of the front seat and his body on its right side behind the steering wheel column. He was alone, and alive and conscious, but did not talk. He was breathing heavily and gasping for breath. His face was very gray and ashen. He was taken to a hospital, but was dead on arrival about thirty minutes after the accident. Before reaching the intersection Bouley was operating along Broadway or South Main Street.

Subject to the plaintiff's general exception, which she does not argue before us, the defendant introduced in evidence a death certificate of the city of Fall River, which showed that Bouley was sixty-five years of age, and that the cause of death was "Heart disease presumably Acute Myocatidial [*sic*] Infarction (sudden death in auto)."

We have been referred to no case in this Commonwealth which is precisely in point. By the great weight of authority a sudden and unforeseeable physical seizure rendering an operator unable to control his motor vehicle cannot be termed negligence. See cases collected in note in 28 A. L. R. 2d 20, 35 et seq. Such an operator does not fall within the definition by Chief Justice Rugg in *Altman* v. *Aronson,* 231 Mass. 588, 591: "Negligence, without qualification and in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances."

The defendant argues that the evidence leaves the cause of the accident a matter of conjecture, and that the plaintiff, who had the burden of proof, must fail. There was evidence warranting a finding of immediately previous normal operation by Bouley on a street north of the intersection. If Bouley was still a normal operator at the time his automobile entered the intersection, he indisputably could have been found negligent, because the automobile entered the intersection against a red light and, moving at a speed of thirty-five miles an hour, struck the post which supported the light. The real issue, upon which the defendant had the burden of proof, is whether the evidence required the jury to find that Bouley was not a responsible operator at the time of entering the intersection. The testimony of the plaintiff that she saw no one at the driver's seat at some unstated time before it hit the post did not require that result. That Bouley was discovered lying on the automobile floor in an expiring condition within five minutes after

running into the plaintiff did not require a finding that his condition related back to a time before entering the intersection or even before striking the post.  In summary, the jury did not have to find that Bouley had experienced a sudden and unforeseeable physical seizure depriving him of the capacity to control his motor vehicle at a time exonerating him from responsibility for its operation.  See *Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 59–60.

This is the opinion of a majority of the court.

*Exceptions sustained.*